**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

REBA ABRAHAM PEARCE,

    *Plaintiff*,

    v.

DEPARTMENT OF THE ARMY,

    *Defendant*.

Civil Action No. 24-520 (SLS)

Judge Sparkle L. Sooknanan

---

## <u>MEMORANDUM OPINION</u>

    Reba Abraham Pearce is a former attorney in the Office of General Counsel at the United States Department of the Army. After the Army fired her, she commenced administrative proceedings before the Equal Employment Opportunity Commission (EEOC) to challenge her termination. With the EEOC litigation still pending, Ms. Pearce brought this lawsuit under the Freedom of Information Act (FOIA) and the Privacy Act seeking records from those proceedings already in her possession, including summary judgment briefing, deposition transcripts, and exhibits. The Army released some of the records in response to the FOIA and Privacy Act requests, and it relied on certain exemptions in those statutes to partially redact and withhold others. The Army now moves for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court grants its motion.

## BACKGROUND

### A.    Statutory Background

    "Both FOIA and the Privacy Act evidence Congressional concern with open government, and especially[ ] accessibility to government records." *Greentree v. U.S. Customs Serv*., 674 F.2d 74, 76 (D.C. Cir. 1982). "Congress enacted FOIA in 1966 to grant a right of public access to

governmental information 'long shielded unnecessarily from public view[.]'" *Martin v. Dep't of Just.*, 488 F.3d 446, 453 (D.C. Cir. 2007) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded by statute*, Freedom of Information Act, Pub. L. No. 93–502, § 2(a), 88 Stat. 1563 (1973)). "FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221 (1978); *see also* 5 U.S.C. § 552. It allows the public to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (cleaned up)). Even though the Act was "broadly conceived," *EPA*, 410 U.S. at 80, it includes nine "carefully structured . . . exemptions," *NLRB*, 437 U.S. at 220. These exemptions demonstrate that the public's right to information is "not absolute and that disclosure of certain information 'may harm legitimate governmental or private interests.'" *Martin*, 488 F.3d at 453 (quoting *Summers v. Dep't of Just.*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).

Almost ten years later, Congress enacted the Privacy Act to "protect the privacy of individuals identified in information systems maintained by Federal agencies[.]" *Doe v. Chao*, 540 U.S. 614, 618 (2004) (cleaned up). The Act requires federal agencies to maintain records used in making determinations about any individual "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination[.]" 5 U.S.C. § 552a(e)(5). In enacting the Privacy Act, Congress was concerned with "safeguard[ing] the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records." *Bartel v. Fed. Aviation Admin.*, 725 F.2d 1403, 1407 (D.C. Cir. 1984). Subject to certain exemptions, the Act provides for certain forms of disclosure so that individuals can "ensure[ ] that [their] records are accurate and properly used." *Id.*

Individuals who are "wrongly denied access to records pertaining to them[,] may bring a civil action to compel the agency to disclose the records." *Kearns v. Federal Aviation Administration*, 312 F. Supp. 3d 97, 106 (D.D.C. 2018) (citing 5 U.S.C. § 552a(g)(1)(B); *id.*, § 552a(g)(3)(A)– (B)).

### B.    Factual Background

In December 2020, the Jacksonville District of the U.S. Army Corps of Engineers fired Ms. Pearce from her position as an attorney in its Office of General Counsel. *See* Def.'s Statement of Material Facts ¶¶ 1–3 (Def.'s Facts), ECF No. 17-2; Pl.'s Statement of Materials Facts at 1 (Pl.'s Facts), ECF No. 23-1. Three days after her termination, Ms. Pearce filed an administrative Equal Employment Opportunity (EEO) complaint against the Army. *See* Def.'s Facts ¶ 3. An administrative judge entered a protective order permitting the Army to designate certain discovery material as "confidential," thus restricting those documents from disclosure "for any purpose whatsoever other than to prepare for and to conduct discovery and hearing in [the] action, including any appeal thereof and any subsequent litigation in federal court of the same claims raised in the above-captioned complaint." Protective Order, ECF No. 1-1; *see also* Def.'s Facts ¶ 5. During those EEOC proceedings, Ms. Pearce deposed seven Army employees and obtained the transcripts of their deposition testimony. *See* Def.'s Facts ¶ 6; *see also* Compl. ¶ 14, ECF No. 1.

On April 8, 2023, Ms. Pearce submitted two FOIA and Privacy Act requests to the Army's Humphreys Engineer Center Support Activity office. *See* Compl., Ex. 3 at 1 (FOIA Request 1), ECF No. 1-1; Compl., Ex. 4 at 1 (FOIA Request 2), ECF No. 1-1; *see also* Pl.'s Facts ¶ 10. She sought certain documents from the EEOC proceedings, including (1) her own motion for summary judgment, (2) the agency's response to her motion for summary judgment, (3) her reply brief, (4) the Agency's correction of Exhibit 7, (5) her objection to an exhibit attached to the agency's

motion, and (6) the transcripts of the seven depositions she conducted. *See* Compl., Ex. 3 at 1; Compl., Ex. 4 at 1, Def.'s Facts ¶¶ 11–12. Through the pending EEOC proceedings, Ms. Pearce already had access to these documents in full. *See* Compl., Ex. 5 at 2, ECF No. 1-1 (explaining Ms. Pearce has access to these documents); *see also* Pl.'s Facts ¶ 14. On April 21, 2023, the Army advised that it had "received and reviewed the requested information and [that it was] withholding the documents in their entirety pursuant to the [EEOC] protective order" and Exemptions 6 and 7 of FOIA. Ex. 5 at 1–2; *see also* Pl.'s Facts ¶ 13. On February 6, 2024, the Army denied an administrative appeal on the same bases. Ex. 7 at 1–2, ECF No. 1-1; *see also* Debelle Decl. ¶ 13.

### C.     Procedural Background

On February 20, 2024, Ms. Pearce brought the instant lawsuit against the Army under FOIA, the Privacy Act, and the Declaratory Judgment Act. *See* Compl. ¶¶ 34–54. The Army agreed to revisit its withholdings, after which it partially released 1,125 pages of responsive records. *See* Debelle Decl. ¶ 16, ECF No. 17-4. The Army produced a *Vaughn* index describing responsive documents and invoking various FOIA exemptions to justify the redaction and withholding of certain of those documents. *See Vaughn Index* (*Vaughn*), ECF No. 17-5; *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). On January 21, 2025, the Army filed the instant motion for summary judgment to defend its decision to partially redact and withhold the remaining records. Def.'s Mot., ECF No. 17. The motion is fully briefed and ripe for review. *See* Pl.'s Opp'n, ECF No. 23; Def.'s Reply, ECF No. 25; Pl.'s Sur-Reply, ECF No. 27.

### LEGAL STANDARD

A court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden is on the movant to make the initial showing of the absence of any genuine issues of material fact." *Ehrman v. United States*, 429 F. Supp. 2d 61, 66 (D.D.C. 2006) (citations omitted). "The evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011) (cleaned up).

FOIA requires federal agencies to conduct an adequate search for responsive records upon a request from a member of the public. *See Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017). And "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (cleaned up). "[T]he agency can make this showing through the submission of an index of documents, known as a *Vaughn* index, sufficiently detailed affidavits or declarations, or both." *Sarras v. U.S. Dep't of Just.*, No. 19-cv-861, 2023 WL 6294164, at *6 (D.D.C. Sept. 27, 2023) (cleaned up). A court will accord an agency's declarations "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Shapiro v. U.S. Dep't of Just.,* 40 F.4th 609, 613 (D.C. Cir. 2022) (quoting *Bartko v. Dep't of Just.*, 898 F.3d 51, 74 (D.C. Cir. 2018) (cleaned up)). A court may likewise rely on agency declarations to support exemptions under the Privacy Act. *See Chambers v. U.S. Dep't of the Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

When a plaintiff requests documents under both FOIA and the Privacy Act, the agency "must demonstrate that the documents fall within some exemption under *each* Act." *Martin v. Off. of Special Couns., Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). In other words, "[i]f a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." *Id.*

## DISCUSSION

The Army moves for summary judgment to defend its partial redactions and withholdings of three categories of documents originating from the EEOC administrative proceedings. *See* Def.'s Mot. The first is briefing by the parties in the EEOC litigation, including Ms. Pearce's own motion for summary judgment, the agency's response to that motion, and Ms. Pearce's reply. *See* Compl. Ex. 3, ECF No. 1-1. The second is a corrected exhibit attached to the Army's response brief (Exhibit 7) and Ms. Pearce's objection to an exhibit attached to the agency's motion. *See id.*; Def.'s Mot. at 2. And the third category includes the transcripts of seven depositions Ms. Pearce conducted in the EEOC proceedings and 43 exhibits used in those depositions. *See* Compl. Ex. 4, ECF No. 1-1; Def.'s Facts ¶ 12. Except for three records withheld in full, the Army has released all of these documents with partial redactions. *See* Debelle Decl. ¶¶ 9, 44. Its declarations and *Vaughn* index detail various FOIA and Privacy Act exemptions. And the Army maintains that it has made a good faith effort to segregate all non-exempt material from material that is exempt, as required under FOIA. *See* Debelle Decl. ¶ 17. Having carefully reviewed the record in this case, the Court agrees that the challenged material is exempt from disclosure under both statutes and grants the Army's motion for summary judgment.

### A.    FOIA

FOIA requires federal agencies to conduct an adequate search for responsive records. *See Rodriguez*, 236 F. Supp. 3d at 34. This requires "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022) (cleaned up). Here, the Army asserts that it properly searched for documents responsive to Ms. Pearce's requests. *See* Debelle Decl. ¶ 9. And Ms. Pearce does not contest the adequacy of the Army's search. *See* Pl.'s Opp'n at

4 ("[T]he parties agree that the adequacy of the agency's search for the requested records is not an issue."). So the Court will focus on the Army's partial redactions and withholdings.

The Army argues that it properly redacted and withheld documents under FOIA's Exemption 5 (attorney-client privilege, work product, and deliberative-process privilege), Exemption 6 (personnel information), and Exemption 7(C) and 7(D) (invasion of personal privacy in law enforcement records). *See* Debelle Decl. ¶ 21.  The Court agrees.

### 1.    Exemption 5

FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law . . . in litigation with the agency," with an exception not relevant here. 5 U.S.C. § 552(b)(5). This exemption "permits an agency to withhold materials normally privileged from discovery in civil litigation against the agency." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (citations omitted). Exemption 5 thus incorporates the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege. *See United States Fish and Wildlife Service v. Sierra Club, Inc.*, 592 U.S. 261, 263 (2021). The Army has invoked all three privileges as to various documents.

### a.    Attorney-Client Privilege

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services" and "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts*, 117 F.3d at 618 (cleaned up). A "fundamental prerequisite to [the] assertion of the privilege" is "confidentiality both at the time of the communication and maintained since." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer."

*Tax Analysts*, 117 F.3d at 618; *see also Coastal States*, 617 F.2d at 863 (The attorney-client privilege applies when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors.").

Here, the Army invokes the attorney-client privilege to partially redact portions of the EEOC summary judgment briefing, deposition transcripts, and exhibits. *See* Debelle Decl. ¶ 25; *see generally Vaughn*. It redacted material regarding consultations with its Office of Counsel; communications about legal conclusions; recommendations between attorneys and agency clients on issues such as government ethics, employment litigation, and personnel matters; ongoing procurement litigation; and Ms. Pearce's assignment tracker while she was an agency attorney. *See* Debelle Decl. ¶¶ 23–24; *Vaughn* Index at 8 (partially redacting portions of Ms. Pearce's reply brief in support of her motion for summary judgment referencing "the communication of legal conclusions and recommendations to the Agency official from the agency related to an ethics opinion request[]"), 15 (partially redacting Exhibit 1 used in Witness 1's deposition because sections of an "assignment tracker" "went into attorney-client . . . privilege"), 16 (partially redacting portions of Exhibit 2 used in Witness 1's deposition involving "[d]etails of an ongoing procurement litigation"), 17 (partially redacting information from Exhibit 2.1 used in Witness 1's deposition including "details [about an] ongoing procurement litigation, fiscal law and government ethics advice to management, and details [regarding] personnel and employment litigation"), 18 (partially redacting information from Exhibit 5 used in Witness 1's deposition including an "[e]mail between [the] Plaintiff and other [a]gency employees and [the] EEO witness" and "[d]escription of work assignments related to government ethics"), 21 (partially redacting Exhibit 1 used in Witness 2's deposition to remove "notes [that] detail [the] Plaintiff's advice to clients

and discussions between members of office of counsel" from the exhibit), 29 (partially redacting Witness 4's deposition transcript to remove "[d]etails of an ongoing procurement litigation which included identifying information of the deponent, [a]gency employees, and the names of other witnesses"), 35–36 (partially redacting Witness 5's deposition transcript involving the "details [about] employment litigation, investigations, and [a] personnel matter"), 37–38 (partially redacting information from Exhibit 4 used in Witness 5's deposition involving "details [about] employment litigation, investigations, and [a] personnel matter"), 39 (same for Exhibit 6 used in Witness 5's deposition), 40 (same for Exhibit 8 used in Witness 5's deposition), 45 (partially redacting from Part 2 of Witness 6's deposition transcript the details of "an ongoing procurement litigation," a "description of an ethics issue and briefing to client," and a "fiscal law issue and briefing to client"), 60 (partially redacting Exhibit 7 from Witness 7's deposition because it referenced communications from the Plaintiff during her time as an attorney with the Army and "[t]hese communications were given in confidence" and "[r]elease of this information would reveal privileged legal advice regarding a matter which was in active litigation"), 60–61 (partially redacting Exhibit 5 from Witness 8's deposition, a gift guidance document, because it "involve[d] the communication of legal conclusions and recommendations to the Agency official from the attorney related to an ethics opinion request[]" and releasing this communication "would reveal privileged legal advice regarding government ethics"). These partially redacted documents include advice that Ms. Pearce provided to the Army (*i.e.*, her client) while employed as an agency attorney, as well as other communications between agency attorneys and agency clients. *See* Pl.'s Facts ¶ 1, Debelle Decl. ¶¶ 22–24. These are quintessential attorney-client communications shielded from disclosure under FOIA's Exemption 5.

In response, Ms. Pearce points out that the partially redacted documents were "filed in the EEOC litigation and ones which [she] now has the ability to review and use in support of her case pending in the Middle District of Florida." Pl.'s Opp'n at 11. To the extent she is arguing that the Army waived attorney-client privilege by providing her with these documents in the EEOC administrative proceedings, she is incorrect. "[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (cleaned up). Here, the requested information was made available to Ms. Pearce in discovery in her EEOC administrative proceedings. That falls far short of what is required to waive privilege. *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (saying an agency waives FOIA Exemption 5 only if it previously released and made "public through an official and documented disclosure" information that "match[es]" and is "as specific" as the information requested by the plaintiff). The fact that Ms. Pearce already has access to the relevant material in her ongoing EEOC litigation does not mean that the agency is required to disclose it publicly under FOIA. After all, "[t]he release of documents through formal discovery procedures pursuant to the Federal Rules of Civil Procedure differs substantially from the FOIA procedures governing the disclosure of documents." *Kay v. F.C.C.*, 976 F. Supp. 23, 34 (D.D.C. 1997) (noting that "[t]he mere fact that [the] plaintiff has acquired the documents through formal discovery in an unrelated litigation does not imply that the [defendant] improperly withheld documents from plaintiff in violation of the FOIA."); *Stonehill v. IRS*, 558 F.3d 534, 538–39 (D.C. Cir. 2009) ("[W]hile information disclosed during discovery is limited to the parties and can be subject to protective orders against further disclosure, when a document must be disclosed under FOIA, it must be disclosed to the general public.").

### b. Attorney Work Product

The attorney work-product doctrine protects "documents prepared in contemplation of litigation" and "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, . . . and prepare legal theories." *Coastal States,* 617 F.2d at 864. It protects the adversary trial process by "encourag[ing] effective legal representation within the framework of the adversary system," thereby "removing counsel's fears that his thoughts and information will be invaded by his adversary." *Id.* (cleaned up). As a result, the "work-product rule does not extend to every written document generated by an attorney" or "shield from disclosure everything that a lawyer does." *Id.* (cleaned up). Rather, it applies only to "materials prepared in anticipation of litigation for trial." *Id.* (cleaned up).

Here, the Army partially redacted and withheld documents as work product, including deposition transcripts and exhibits that referenced "legal strategies and details regarding ongoing litigation or potential personnel matters that may result in litigation," "work on ongoing procurement litigation, fiscal law and government ethics advice, and particular cases of personnel and employment litigation." Debelle Decl. ¶ 25; *see, e.g.*, *Vaughn* at 4 (partially redacting portions of Ms. Pearce's motion for summary judgment to protect "potential settlement agreements and litigation strategies"), 14–15 (partially redacting attorney work product from the deposition transcript of Witness 1 because the deposition included the "[d]etails of an ongoing procurement litigation"), 15 (partially redacting "details [of] ongoing procurement litigation, fiscal law and government ethics advice to management, and details personnel and employment litigation" from Exhibit 1 used in Witness 1's deposition), 16 (partially redacting Exhibit 2 from Witness 1's deposition because it included the "[d]etails of an ongoing procurement litigation"), 17 (partially redacting Exhibit 2.1 used in Witness 1's deposition to remove the "details [of] ongoing

procurement litigation, fiscal law and government ethics advice to management, and details [of] personnel and employment litigation"), 18 (partially redacting "[d]escription of work assignments related to government ethics" from Exhibit 5 used in Witness 1's deposition), 21 (partially redacting Exhibit 1 used in Witness 2's deposition because it included "notes detail[ing] [the] Plaintiff's advice to clients and discussions between members of office of counsel" and "[d]etails [of an] ongoing procurement litigation"), 29 (partially redacting information in Witness 4's deposition discussing "[d]etails of an ongoing procurement litigation"), 35–36 (partially redacting the deposition transcript of Witness 5 because it contained "details with employment litigation, investigation, and personnel matter" and "attorney work product"), 37–38 (partially redacting Exhibit 4 used in Witness 5's deposition that referenced "details with employment litigation, investigations, and personnel matter"), 39 (partially redacting Exhibit 6 used in Witness 5's deposition that referenced "details with employment litigation, investigations, and personnel matter"), 40 (partially redacting Exhibit 8 used in Witness 5's deposition that referenced "details with employment litigation, investigations, and personnel matter"), 43 (partially redacting the deposition transcript of Witness 6 referencing "details of an ongoing procurement litigation"); 45 (partially redacting a "description of an ethics issue and briefing to client" and "fiscal law issue and briefing to client" in Part 2 of the deposition transcript of Witness 6), 60 (partially redacting information from Exhibit 7 used in Witness 7's deposition that "would reveal privileged legal advice regarding a matter which was in active litigation"). As materials "prepared in anticipation of litigation," *Coastal States*, 617 F.2d at 864 (cleaned up), the Army properly redacted and withheld them as attorney work product.

The Army also invoked the work-product doctrine to partially redact and withhold material in Ms. Pearce's summary judgment motion and certain deposition exhibits about a potential

settlement agreement that was never finalized. *See* Debelle Decl. ¶ 26; *see, e.g.*, *Vaughn* at 4–5 (partially redacting portions of Ms. Pearce's motion for summary judgement referencing a potential settlement agreement), 45 (partially redacting Part 2 of the deposition transcript of Witness 6 with a "[d]escription of [a] not executed settlement agreement"), 52 (partially redacting Exhibit 13a used in Witness 6's deposition referencing a "not executed settlement agreement"), 54 (similar for Exhibit 16 used in Witness 6's deposition). The work-product privilege shields this material from disclosure. *See Cities Serv. Co. v. FTC*, 627 F. Supp. 827, 832 (D.D.C. 1984) ("[A]ny attorney's notes or working papers which relate to litigation decisions or to possible settlement discussions pertaining to foreseeable litigation are protected under the attorney work-product privilege." (citations omitted)).

Ms. Pearce offers nothing to counter the agency's declarations and *Vaughn* index. And "[t]he Court may grant summary judgment based solely on [an] agency's declarations if they are not contradicted by contrary record evidence or by evidence of the agency's bad faith." *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 108 (D.D.C. 2021). In light of the Army's detailed declaration and *Vaughn* index, and in the absence of any contrary evidence in the record, the Court upholds the partial redactions and withholdings for attorney work product.

### c. Deliberative-Process Privilege

The deliberative-process privilege "shields documents 'reflecting advisory opinions, recommendations, and deliberations' that agencies use to make decisions." *Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1013 (D.C. Cir. 2024) (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021)). The privilege encourages "open and frank discussion" among government officials, *Dep't of Interior v. Klamath Water Users Protective*

13

*Ass'n*, 532 U.S. 1, 9 (2001), ensuring that "'debate and candid consideration of alternatives within an agency' are not subject to public inspection," *Emuwa*, 113 F.4th at 1013 (quoting *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)). "[I]nformation must be both 'predecisional' and 'deliberative'" to be protected. *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citations omitted). A document is "predecisional" if it is made "before the adoption of an agency policy[.]" *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). And a document is "deliberative" if it makes "recommendations or express[es] opinions on legal or policy matters." *Jud. Watch of Fla., Inc. v. U.S. Dep't of Just.*, 102 F. Supp. 2d 6, 12 (D.D.C. 2000) (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). The government thus bears the burden of showing that the materials were "generated before the adoption of an agency policy" and reflect "the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866, 868.

The Army partially redacted Ms. Pearce's summary judgment motion and certain deposition exhibits to withhold information about a settlement proposal and draft settlement agreement that it sent to Ms. Pearce while she was still employed at the agency. *See* Debelle Decl. ¶ 28; *Vaughn* at 4–5 (partially redacting portions of Ms. Pearce's motion for summary judgment referencing a potential settlement agreement), 52 (partially redacting Exhibit 13a used in Witness 6's deposition to remove information referencing a "not executed settlement agreement"), 54 (similar for Exhibit 16 used in Witness 6's deposition). The Army's declarant explained that "[b]ecause a final decision had not yet been made, the drafts and proposals contained information that the [a]gency would deliberate on before potentially reaching an ultimate decision on settlement and the terms of the [the] Plaintiff's departure." Debelle Decl. ¶ 28. The Army also redacted one witness exhibit containing confidential information about litigation strategies.

14

*Vaughn* at 60 (partially redacting Exhibit 7 used in Witness 7's deposition to remove information that would reveal "advisement to clients, commanders, and other management officials on government ethics and fiscal law" and other "litigation strategies" while she was employed as a lawyer with the Army).

The deliberative process privilege protects predecisional documents about personnel actions. *See Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 208 (D.C. Cir. 1990). And draft documents that do not "reflect[] a settled 'agency position'" but "record a dialogue within the agency" are "deliberative as well as pre-decisional" and thus are "exempt from the disclosure requirement of the FOIA." *Id.*; *see also Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) ("Draft documents, by their very nature, are typically predecisional and deliberative."). The material in question is both predecisional and deliberative, as it does not show the agency's "ultimate decision on the terms of its non-continuation of Plaintiff's employment," Debelle Decl. ¶ 28, *see also supra*, at 13, and it reflects "the give-and-take of the consultative process," *Coastal States*, 617 F.2d at 866; *see, e.g.*, *Cities Serv. Co. v. FTC*, 627 F. Supp. 827, 836 (D.D.C. 1984) (finding settlement documents were properly withheld under the deliberative process privilege).

In arguing that the deliberative-process privilege does not apply, Ms. Pearce recites the general standard for invoking the privilege and notes that the government bears the burden of establishing it. *See* Pl.'s Opp'n 10–11. But Ms. Pearce does not address the Army's declarations or *Vaughn* index defending its invocation of the privilege. On this record, the Court finds that the redactions are within the scope of the deliberative-process privilege.

2.      **Exemption 6**

FOIA's Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This allows an agency "to protect the privacy of individuals identified in certain agency records," *ACLU*, 655 F.3d at 6, by exempting "disclosures that would constitute an invasion of privacy," *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989) (cleaned up).

A court reviewing whether Exemption 6 was properly applied must answer two questions. First, a court must determine whether the records sought are "personnel," "medical," or "similar files." 5 U.S.C. § 552(b)(6). The term "similar files" includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also Jud. Watch, Inc.,* 449 F.3d at 152–53 ("We have . . . read [Exemption 6] to exempt not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy." (cleaned up)). "The information in the file need not be intimate for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Shapiro v. Dep't of Just.*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014) (cleaned up).

Second, a court must "determine whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (cleaned up). "If a substantial privacy interest is at stake, then the court must 'balance' the individual's right of privacy against the public interest in disclosure." *Id.* (quoting *Horowitz v. Peace Corps.*, 428 F.3d 271, 278 (D.C. Cir. 2005) (citation omitted)). This public interest analysis requires a court to assess "the extent to which disclosure of

the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994)). Thus, "[i]nformation that reveals little or nothing about an agency's own conduct does not further the statutory purpose[.]" *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993); *cf., e.g.*, *Sinsheimer v. U.S. Dep't of Homeland Sec.*, 437 F. Supp. 2d 50, 56 (D.D.C. 2006) (affirming the application of a FOIA exemption to withhold names of witnesses and personnel implicated in a civil rights investigation because "[d]isclosure would not significantly advance the public knowledge of government operations").

Here, the agency partially redacted and withheld various categories of personal information in the EEOC summary judgment briefing, certain deposition transcripts, and certain exhibits, including "names, gender pronouns, dates of birth, place[s] of birth, personal residences, telephone number[s], work address[es], work location[s], email addresses, medical information, family histories, marital status, leave schedules, employment history, school information, professional titles, and details about work assignments." Debelle Decl. ¶ 30; *see also Vaughn* at 5 (partially redacting Ms. Pearce's motion for summary judgement because it "contain[s] information which would allow for the identification of a federal government employee or non-employee citizen" and "these individuals have no actual relation to the underlying litigation matter for which the declaration was provided," such as "the Agency case identifier, witness or federal employee names, gender pronouns, office location, details regarding work relationships, substance of possible testimony, the last four of SSN, and job titles"), 6–7 (similar for agency's response to Ms. Pearce's motion for summary judgment), 8–9 (similar for Ms. Pearce's reply to agency's response), 10 (partially redacting the agency's corrected Exhibit 7 to remove "witness names,

witness title, office location, role within the office, and experience with Plaintiff" since the information "would allow for the identification of a federal government employee serving as a witness to an agency investigation"), 11 (similar for Ms. Pearce's objection to the agency's exhibit), 12–13 (redacting the deposition transcript of Witness 1 to remove "the name of the deponent, the Agency investigation identifier, deponent's work history, position title, GS-level, work location, third-party names, details of other Agency investigations, names of other witnesses to the underlying investigation, and other personal identifying information"), 19–20 (same for deposition transcript of Witness 2), 22–23 (same for deposition transcript of Witness 3), 27–28 (same for deposition transcript of Witness 4), 33–34 (same for deposition transcript of Witness 5), 41–42 (same for Part 1 of the deposition transcript of Witness 6), 43–44 (same for Part 2 of the deposition transcript of Witness 6), 56–57 (same for deposition transcript of Witness 7), 15 (partially redacting Exhibit 1 used in Witness 1's deposition to remove the "names of clients, [a]gency employees, EEO witnesses, deponents, and other third-party names and identifying information," including their "position title, work location, and work history"), 16 (partially redacting Exhibit 2 used in Witness 1's deposition to remove the "names of opposing counsel, name of EEO witnesses, Agency employees, [and a] client name"), 17 (partially redacting Exhibit 2.1 used in Witness 1's deposition to remove personal identifying information), 18 (same for email used in Witness 1's deposition), 18–19 (same for Exhibit 5 used in Witness 1's deposition), 21–22 (same for Exhibit 1 used in Witness 2's deposition), 25–26 (same for Exhibit 6 used in Witness 3's deposition), 30 (same for Exhibit 1 used in Witness 4's deposition),  30–31 (same for Exhibit 2 used in Witness 4's deposition), 31 (same for Exhibit 3 used in Witness 4's deposition), 32 (same for Exhibit 4.2 used in Witness 4's deposition), 33 (same for Exhibit 12 used in Witness 4's deposition), 37 (same for Exhibit 3 used in Witness 5's deposition), 37–38 (same for Exhibit 4

used in Witness 5's deposition), 38 (same for Exhibit 5 used in Witness 5's deposition), 39 (same for Exhibit 6 used in Witness 5's deposition), 40 (same for Exhibit 8 used in Witness 5's deposition), 45–46 (same for Exhibit 2 used in Witness 6's deposition), 46 (same for Exhibit 4 used in Witness 6's deposition), 47 (same for Exhibit 5 used in Witness 6's deposition), 47–48 (same for Exhibit 7b used in Witness 6's deposition ), 48 (same for Exhibit 8 used in Witness 6's deposition), 49 (same for Exhibit 9 used in Witness 6's deposition), 49–50 (same for Exhibit 10 used in Witness 6's deposition), 50–51 (same for Exhibit 11.5 used in Witness 6's deposition), 52 (same for Exhibit 11 used in Witness 6's deposition), 53 (same for Exhibit 13a used in Witness 6's deposition), 54 (same for Exhibit 16 used in Witness 6's deposition), 55 (same for Exhibit 18 used in Witness 6's deposition), 56 (same for Exhibit 3 used in Witness 6's deposition), 58–59 (same for Exhibit 3 used in Witness 7's deposition), 59 (same for Exhibit 6 used in Witness 7's deposition), 60 (same for Exhibit 7 used in Witness 7's deposition), 61 (partially redacting personal identifying information from a gift guidance document). This information falls in the heartland of Exemption 6. *See Shapiro*, 34 F. Supp. 3d at 94 ("Information protected under Exemption 6 includes such items as a person's name, address, place of birth, employment history, and telephone number." (citations omitted)); *Niskanen Ctr. v. FERC*, 20 F.4th 787, 791 (D.C. Cir. 2021) (noting that this requirement "is not very demanding" (cleaned up)).

Turning to the second requirement, the burden shifts to Ms. Pearce to demonstrate that the disclosure serves a public interest to overcome these privacy interests. *See Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." (citations omitted)). She argues in conclusory fashion that the public interest is served "in disclosing the subject material showing the degree to which [the] [a]gency is

functioning, identifying those involved in the decision-making process, and demonstrating the extent to which the [a]gency is complying with its statutory responsibilities." Pl.'s Opp'n at 15. But the names, gender pronouns, dates of birth, marital status, addresses, medical information, and employment histories of third parties who were deposed or involved in Ms. Pearce's EEOC litigation does nothing to "shed light on [the] agency's performance of its statutory duties" or "let citizens know what their government is up to." *Lepelletier*, 164 F.3d at 46 (cleaned up). With no discernable public interest in disclosure of this highly personal information, the Court "need not linger over the balance; something . . . outweighs nothing every time." *Beck*, 997 F.2d at 1494 (cleaned up).

But another fact tilts any balancing even further in the Army's favor. The judge presiding over Ms. Pearce's administrative EEO proceedings entered a protective order permitting the agency to designate specific discovery material as "confidential," thus restricting it from disclosure "for any purpose whatsoever other than to prepare for and to conduct discovery and hearing in [that] action, including any appeal thereof and any subsequent litigation in federal court of the same claims raised in [that] complaint." Protective Order, ECF No. 1-1; *see also* Compl. ¶¶ 11–13; Debelle Decl. ¶¶ 35, 41–42. And the Army's declarant has explained that the witnesses fear that disclosure "would allow individuals to harass or attempt to befriend" them and "seriously prejudice their effectiveness in conducting legal representation of the Agency, advising Agency clients in sensitive and confidential matters, and performing day-today work." Debelle Decl. ¶ 32. In fact, "[i]t was explicitly made clear to the witnesses that the protective order would apply to their depositions and other statements made during the course of both [the] EEO investigation and later discovery during the EEOC litigation." *Id.* ¶ 41; *see also id.* ¶ 42. Exemption 6 has been used in similar circumstances to protect personal information from public disclosure. *See, e.g.*, *Sarras*,

2023 WL 6294164, at *10 (upholding application of an exemption where "release of the employees' personal information could subject them to harassment and unwanted publicity" (cleaned up)); *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 118 (D.D.C. 2005) (same because federal employees had a "privacy interest . . . in avoiding the unwanted contact or harassment that would result from the release of their names"). And the privacy interest here is more substantial because the individuals are "members who are at the military rank of Colonel or below and at the civilian rank of GS-15 or below," Debelle Decl. ¶ 31, and "low-level government employees . . . have a heightened privacy interest," *Insider, Inc. v. U.S. Gen. Servs. Admin.*, 635 F. Supp. 3d 1, 4 (D.D.C. 2022) (citing *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 938 (D.C. Cir. 1982)); *see also Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, No. 18-cv-2622, 2021 WL 4502106, at *15 (D.D.C. Sept. 30, 2021) ("[I]t is well-established that lower-level government employees in general have a privacy interest in their identities."). Ms. Pearce has not overcome this significant privacy interest.

In arguing otherwise, Ms. Pearce cites three cases to argue that the Army improperly relied on Exemption 6. *See* Pl.'s Opp'n at 12–15 (citing *Hunton & Williams LLP v. U.S. EPA*, 248 F. Supp. 3d 220, 257 (D.D.C. 2017); *Fortson v. Harvey*, 407 F. Supp. 2d 13, 17–18 (D.D.C. 2005); *Hall v. U.S. Dep't of Just.*, 552 F. Supp. 2d 23, 31 (D.D.C. 2008)). But those cases do not help her cause. In *Hunton*, the court found a strong public interest in identifying the names of employees involved in Clean Water Act and Rivers and Harbors Act compliance. 248 F. Supp. 3d at 228, 258. The court reasoned that the agency had already named several of the individuals in its briefings and had not provided any reason to believe they faced risks such as harassment. *Id.* at 258. In *Fortson*, the court found that the individual privacy interests did not outweigh the public interest in an EEO investigation because the "government ha[d] already released the names

of those persons who gave statements[.]" 407 F. Supp. at 17. And the harm articulated—unfavorable personnel evaluations and workplace harassment—was "pure speculation." *Id.* And in *Hall*, the court declined to permit the government to redact names of witnesses already in the public domain. *See* 552 F. Supp. 2d at 30–31.

Here, by contrast, there is no indication that the personal information the Army redacted is already public. And the Army's declarant explained that disclosure of the witnesses' personal information would result in harassment. *See* Debelle Decl. ¶ 32. These witnesses were also informed that they would be protected by the protective order in place in the administrative proceedings, strengthening their privacy interest. *See* Def.'s Mot. at 21–22; Debelle Decl. ¶¶ 41–42. Ultimately, Ms. Pearce has not met her burden or overcoming the heightened privacy interests of these third-party witnesses. On this record, the Court finds that the Army properly relied on Exemption 6 to partially redact and withhold personal information.

### 3.    Exemption 7

Next up is FOIA's Exemption 7. The Army relies on Exemption 7(C) and Exemption 7(D), which both protect information compiled for law enforcement purposes.

#### a.  Exemption 7(C)

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C). "Thus, if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees." *Jefferson v. Dep't of Just., Off. of Pro. Resp.*, 284 F.3d 172, 177 (D.C. Cir. 2002) (citation omitted). This exemption "recognizes the stigma

potentially associated with law enforcement investigations and affords [] privacy rights to suspects, witnesses, and investigators." *Bast v. U.S. Dep't of Just.*, 665 F.2d 1251, 1254 (D.C. Cir. 1981). "In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure." *Shapiro*, 34 F. Supp. 3d at 95. "The privacy interest at stake belongs to the individual, not to the government agency." *Id.* (cleaned up).

"[B]ecause Exemption 7(C) permits withholding of such records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure, Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." *ACLU*, 655 F.3d at 6 (cleaned up). Having found that the Army properly redacted and withheld information under Exemption 6, its burden is lower under Exemption 7(C).

The Army partially redacted "names, addresses, personnel actions, and medical information of witnesses and deponents" under Exemption 7(C) in the EEOC summary judgment briefing, certain deposition transcripts, and certain exhibits, arguing that this "personal information . . . would constitute an unwarranted invasion of personal privacy if disclosed[.]" Def.'s Mot. at 23; *see also* Debelle Decl. ¶¶ 30–35; *Vaughn* at 5, (partially redacting summary judgement briefing referencing "witness or federal employee names, gender pronouns, office location, details regarding work relationships, substance of possible testimony, the last four of SSN, and job titles"), 7 (similar), 8 (similar), 10 (redacting an agency exhibit containing "witness names, witness title, office location, role within the office, and experience with Plaintiff"), 11 (redacting Ms. Pearce's objection to the agency's exhibit where the "information which would allow for the identification of a federal government employee serving as a witness to an agency investigation as well as other

third-party individuals"), 12–13 (partially redacting deposition transcript of Witness 1 that "contain[ed] the name of the deponent, the [a]gency investigation identifier, deponent's work history, position title, GS-level, work location, third-party names, details of other Agency investigations, names of other witnesses to the underlying investigation, and other personal identifying information" because "the disclosure of the name of the deponent could reasonably be expected to constitute an unwarranted invasion of this individual's personal privacy"), 19–20 (same for deposition transcript of Witness 2), 22–23 (same for deposition transcript of Witness 3), 27–28 (same for deposition transcript of Witness 4), 33–34 (same for deposition transcript of Witness 5), 41–42 (same for Part 1 of the deposition transcript of Witness 6), 43–44 (same for Part 2 of the deposition transcript of Witness 6), 56–57 (same for deposition transcript of Witness 7), 17 (partially redacting an exhibit to remove personal identifying information), 18 (same for email used in Witness 1's deposition), 18–19 (same for Exhibit 5 used in Witness 1's deposition), 21–22 (same for Exhibit 1 used in Witness 2's deposition), 25–26 (same for Exhibit 6 used in Witness 3's deposition), 30 (same for Exhibit 1 used in Witness 4's deposition), 30–31 (same for Exhibit 2 used in Witness 4's deposition), 31 (same for Exhibit 3 used in Witness 4's deposition), 32 (same for Exhibit 4.2 used in Witness 4's deposition), 33 (same for Exhibit 12 used in Witness 4's deposition), 37 (same for Exhibit 3 used in Witness 5's deposition), 37–38 (same for Exhibit 4 used in Witness 5's deposition), 38 (same for Exhibit 5 used in Witness 5's deposition), 39 (same for Exhibit 6 used in Witness 5's deposition), 40 (same for Exhibit 8 used in Witness 5's deposition), 45–46 (same for Exhibit 2 used in Witness 6's deposition), 46 (same for Exhibit 4 used in Witness 6's deposition), 47 (same for Exhibit 5 used in Witness 6's deposition), 47–48 (same for Exhibit 7b used in Witness 6's deposition), 48 (same for Exhibit 8 used in Witness 6's deposition), 49 (same for Exhibit 9 used in Witness 6's deposition), 49–50 (same for Exhibit 10

used in Witness 6's deposition), 50–51 (same for Exhibit 11.5 used in Witness 6's deposition), 52 (same for Exhibit 11 used in Witness 6's deposition), 53 (same for Exhibit 13a used in Witness 6's deposition), 54 (same for Exhibit 16 used in Witness 6's deposition), 55 (same for Exhibit 18 used in Witness 6's deposition), 56 (same for Exhibit 3 used in Witness 6's deposition), 58 (same for Exhibit 3 used in Witness 7's deposition), 59 (same for Exhibit 6 used in Witness 7's deposition), 60 (same for Exhibit 7 used in Witness 7's deposition), 61 (partially redacting personal identifying information form a gift guidance document).

Ms. Pearce contests the Army's redactions, arguing that "[n]o part of the subject materials was compiled by the Agency for 'law enforcement' purposes." Pl.'s Opp'n at 15–16. But Ms. Pearce reads "law enforcement purposes" too narrowly. "It has been long established that the phrase 'law enforcement purposes'" in Exemption 7 "extends to both criminal and civil proceedings." *Sinsheimer*, 437 F. Supp. 2d at 55 (D.D.C. 2006) (citation omitted). The investigation in question "may arise in the course of carrying out an agency's administrative duties—as opposed to a duty tied directly to the substantive mission of the agency—if 'the inquiry departs from the routine and focuses with special intensity upon a particular party.'" *Id.* (quoting *Ctr. for Nat'l Pol'y Rev. on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 374 (D.C. Cir. 1974)). In other words, to fall within Exemption 7(C), "records must generally be generated during the course of an investigation and involve the detection or punishment of violations of law." *Id.* Exemption 7 thus generally extends to agency administrative proceedings like the one at issue here. *See, e.g.*, *Rural Hous. All. v. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974) ("What the Government is required to show is that the investigatory files were compiled for adjudicative or enforcement purposes."); *Mittleman v. Off. of Pers. Mgmt*, 76 F.3d 1240, 1243 (D.C. Cir. 1996) (finding that federal employee background investigations satisfy Exemption 7's threshold);

*Jefferson*, 284 F.3d at 178–79 (holding that Exemption 7(C) "'covers investigatory files related to enforcement of all kinds of laws,' including those involving 'adjudicative proceedings'" such as Office of Professional Responsibility conduct if such inquiries are for "violations of law" and not for "oversight of the performance of duties").

The investigation at issue here was carried out because of the EEO proceeding Ms. Pearce commenced alleging that the Army engaged in discrimination and retaliation. *See* Pl.'s Facts ¶ 3 (citing to Compl. ¶ 10). The purpose was to determine whether the Army violated civil rights laws. *See id.* The Court thus finds that the investigation was carried out to enforce federal civil rights laws and thus had a law enforcement purpose. *See Jefferson*, 284 F. 3d at 177 ("[I]f the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees." (citation omitted)). "The fact that [the investigation] was not [a] criminal investigation[] does not defeat the application of Exemption 7." *Sinsheimer*, 437 F. Supp. 2d at 55 (citation omitted). The Army thus satisfies the threshold requirement of Exemption 7(C).

Next, as with Exemption 6, the privacy interest of those protected by Exemption 7(C) must be balanced against the public interest that would be served by disclosure. *See Shapiro*, 34 F. Supp. 3d at 95. Again, the "central public interest in FOIA is shedding light on an agency's performance of its statutory duties." *Sinsheimer*, 437 F. Supp. 2d at 55 (citation omitted). And "the Supreme Court has emphasized breadth of the privacy interests at stake, comprising all interests that individuals have in controlling access to information about themselves." *Id.* (citation omitted).

On one side of the ledger, the Army's declarant has explained that "disclosing the names of the individuals involved would cause foreseeable harm by subjecting such individuals to annoyance or harassment in their private lives." Debelle Decl. ¶ 31. And the information withheld

under Exemption 7(C) "would have a significant negative effect on the willingness of [a]gency employees to participate or provide statements in future cases, negatively affecting the [a]gency's ability to fairly and justly investigate and adjudicate these cases." *Id.* ¶ 32. On the other side, Ms. Pearce appears to raise the same argument that she did under Exemption 6, arguing only that "there is a public interest . . . to be served in disclosing the subject material showing the degree to which [the] Agency is functioning, identifying those involved in the decision-making process, and demonstrating the extent to which the Agency is complying with its statutory responsibilities." Pl.'s Opp'n at 15. On balance, the Court finds that the Army properly redacted this personal identifying information under Exemption 7(C). *See, e.g.*, *Sinsheimer*, 437 F. Supp. 2d at 54–56 (affirming the application of Exemption 7(C) to protect the names of "witnesses, [the] plaintiff's co-workers, investigators, and other personnel mentioned" because of the public interest in encouraging cooperation and participation of agency employees in investigations of civil rights violations).

### b.  Exemption 7(D)

Exemption 7(D) protects from disclosure "information compiled for law enforcement purposes" if its release "could reasonably be expected to disclose the identity of a confidential source" or could disclose "information furnished by a confidential source" in the course of a criminal or national security intelligence investigation. 5 U.S.C. § 552(b)(7)(D). "[A]n agency must establish a source's confidentiality on a case-by-case basis, either by showing that the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Shapiro v. CIA*, 247 F. Supp. 3d 53, 67 (D.D.C. 2017) (quoting *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam)). "The key question is not whether the requested information is of the type that the agency usually

treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." *Wash. Post Co.*, 2021 WL 4502106, at *8 (cleaned up).

Here, the agency relied on Exemption 7(D) to withhold in full three records—declarations from Army employees made during the EEOC investigation about Ms. Pearce's termination. *See Vaughn* at 25 ("The information [in Exhibit 4 used in Witness 3's deposition] is also withheld under 7(D) in its entirety to protect the witness pursuant to the implied confidentiality agreement created between the EEOC and witnesses in the EEOC investigative process."), 26–27 (same for Exhibit 7 in Witness 3's deposition), 36 (same for Exhibit 1 in Witness 5's deposition).

The Army also redacted portions of certain deposition transcripts and exhibits on the same basis. *See* Debelle Decl. ¶¶ 39–43, 41 ("It was explicitly made clear to the witnesses that the protective order would apply to their depositions and other statements made during the course of both [the] EEO investigation and later discovery during the EEOC litigation."); *see also Vaughn* at 5–6 (partially withholding information in summary judgment briefing because "[u]nder exemption 7D the release of this document could reveal the identity of confidential witnesses to an investigation"), 7 (same), 10–11 (partially withholding in the agency's Exhibit 7 the "details regarding the witness' experiences with Complainant and details relating to their job duties, title, location, and other related matters have been redacted to prevent their identification by a knowledgeable reader"), 11–12 (partially withholding the name of the declarant from Ms. Pearce's objection to the agency's exhibit because it is "non-segregable information [that] was utilized as part of an investigation and litigation" and falls under the 7(D) exemption), 12–13 (partially redacting the deposition transcript for Witness 1 under the 7(D) exemption because "the deponent was given express assurance of confidentiality thanks to a protective order that was in place at the

time of the deposition throughout the course of the EEOC litigation"), 19–21 (same for the deposition transcript for Witness 2), 22–24 (same for the deposition transcript for Witness 3), 27–29 (same for the deposition transcript for Witness 4), 33–35 (same for the deposition transcript for Witness 5), 41–42 (same for Part 1 for the deposition transcript for Witness 6), 43–45 (same for Part 2 for the deposition transcript for Witness 6), 56–58 (same for the deposition transcript for Witness 7), 17–18 (partially redacting an exhibit to remove information that could be used to identify the witness), 18 (same for email used in Witness 1's deposition), 18–19 (same for Exhibit 5 used in Witness 1's deposition), 21–22 (same for Exhibit 1 used in Witness 2's deposition), 25–26 (same for Exhibit 6 used in Witness 3's deposition), 30 (same for Exhibit 1 used in Witness 4's deposition),  30–31 (same for Exhibit 2 used in Witness 4's deposition), 31–32 (same for Exhibit 3 used in Witness 4's deposition), 32 (same for Exhibit 4.2 used in Witness 4's deposition), 33 (same for Exhibit 12 used in Witness 4's deposition), 37 (same for Exhibit 3 used in Witness 5's deposition), 37–38 (same for Exhibit 4 used in Witness 5's deposition), 38 (same for Exhibit 5 used in Witness 5's deposition), 39–40 (same for Exhibit 6 used in Witness 5's deposition), 40 (same for Exhibit 8 used in Witness 5's deposition), 45–46 (same for Exhibit 2 used in Witness 6's deposition), 46–47 (same for Exhibit 4 used in Witness 6's deposition), 47 (same for Exhibit 5 used in Witness 6's deposition), 47–48 (same for Exhibit 7b used in Witness 6's deposition ), 48 (same for Exhibit 8 used in Witness 6's deposition), 48–49 (same for Exhibit 9 used in Witness 6's deposition), 49–50 (same for Exhibit 10 used in Witness 6's deposition), 50–51 (same for Exhibit 11.5 used in Witness 6's deposition), 51–52 (same for Exhibit 11 used in Witness 6's deposition), 52–53 (same for Exhibit 13a used in Witness 6's deposition), 54–55 (same for Exhibit 16 used in Witness 6's deposition), 55 (same for Exhibit 18 used in Witness 6's deposition), 56 (same for Exhibit 3 used in Witness 6's deposition), 58–59 (same for Exhibit 3

used in Witness 7's deposition), 59–60 (same for Exhibit 6 used in Witness 7's deposition), 60 (same for Exhibit 7 used in Witness 7's deposition).

According to the Army's declarant, it obtained declarations and deposition testimony from these individuals by providing specific assurances of confidentiality: In order "to successfully obtain the desired information through an interview" and allay concerns of the witnesses "that [their] identit[ies] will possibly be associated with said investigation," the witnesses "were assured that their names and personal identifying information would be held in confidence." Debelle Decl. ¶ 42; *see also Vaughn* at 25, 26, 36. And "the information provided by individuals during an EEO investigation into discrimination is a key tool to uncover potentially inappropriate and discriminatory or retaliatory actions within a federal agency." *Vaughn* at 25. On these facts, the Army has adequately justified its Exemption 7(D) withholdings. *See, e.g.*, *Martinez v. E.E.O.C.*, No. SA04CA0391XR, 2004 WL 2359895, at *5 (W.D. Tex. Oct. 19, 2004) ("[W]hile not determinative, the release of the identity and statements of the witnesses would undoubtedly hamper the ability of the EEOC to investigate valid claims of discrimination in the future. The Court finds, therefore, that there was an implied confidentiality agreement between the witnesses and the EEOC.").

In any event, Ms. Pearce does not appear to challenge the Army's application of Exemption 7(D) in opposing the instant motion. *See* Pl.'s Opp'n. And "[w]here [a] FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact specific documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction." *Shapiro*

*v. U.S. Dep't of Just.*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

### 4. Segregability

Under FOIA, an agency must provide "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b), "unless the exempt portions are inextricably intertwined with exempt portions," *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (cleaned up). The agency is entitled "to a presumption that [it] complied with the obligation to disclose reasonably segregable material, which can be overcome only with some quantum of evidence." *Citizens United v. U.S. Dep't of State*, No. 18-cv-1862, 2021 WL 3268385, at *8 (D.D.C. July 29, 2021) (cleaned up). Such evidence can include "[a]ffidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a *Vaughn* index describing the withheld record[.]" *Inst. for Energy Rsch. v. FERC*, No. 22-cv-3420, 2024 WL 551651, at *13 (D.D.C. Feb. 12, 2024) (quoting *Johnson*, 310 F.3d at 776). While an agency "must specifically and thoughtfully" consider whether otherwise exempt information can be released without foreseeable harm, *Leopold v. Dep't of Just.,* 94 F.4th 33, 38 (D.C. Cir. 2024), an attestation "that 'no further segregation' [is] possible without disclosing such [exempt] information" fulfills the agency's duty to segregate non-exempt material and to establish foreseeable harm, *Emuwa*, 113 F.4th at 1017 (citations omitted).

The Army has met its burden by providing a *Vaughn* index and "a declaration attesting that the agency released all segregable material." *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F. Supp. 3d 260, 277 (D.D.C. 2014). The Army's declarant explained that she "ensured that the [a]gency

reviewed the documents line by line and confirm[ed] that the non-exempt portions were segregated from the exempt portions and the non-exempt portions were produced." Debelle Decl. ¶ 43. And she "considered whether exempt portions could be released and determined that they could not be further released without incurring reasonably foreseeable harm[.]" *Id.* In total, the Army "fully withheld only three documents"—"the declarations of three [a]gency witnesses." *Id.* ¶ 44. Having produced a detailed *Vaughn* index and declarations, the Army is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

To rebut this presumption, a plaintiff must produce a "quantum of evidence," at which point "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Id.* Here, Ms. Pearce questions the "foreseeable harm" of many of the redactions given that her "civil rights claims are in litigation in a federal district court." Pl.'s Opp'n at 16. But because the release of documents in discovery and under FOIA are not coextensive, *see supra*, at 10–11, this argument does not provide the "quantum of evidence" needed at this stage, *Sussman*, 494 F.3d at 1117. Otherwise, Ms. Peace provides nothing more than a bald assertion that the agency has not met its burden because "[t]he disclosures include blocks of information that have been largely redacted." Pl.'s Opp'n at 16. Without more, there is no basis to disturb the presumption that the Army met its obligation to disclose reasonably segregable material.

### B.    Privacy Act

The Army also defends its partial redactions and withholdings under the Privacy Act, which provides that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any

portion thereof in a form comprehensible to him[.]" 5 U.S.C. § 552a(d)(1). But the Act's disclosure requirements are not absolute. The government may not disclose information about third parties without their consent. *See id.* § 552a(b). And the Privacy Act prohibits the release of "any information compiled in reasonable anticipation of a civil action or proceeding." *Id.* § 552a(d)(5); *see Mobley v. CIA*, 924 F. Supp. 2d 24, 60 (D.D.C. 2013). "[I]n determining whether records are properly classified a court must give 'substantial weight' to agency declarations and affidavits, so long as they 'contain reasonable specificity detail,' even while it conducts a *de novo* review of the decision to withhold." *Blazy v. Tenet*, 979 F. Supp. 10, 23 (D.D.C. 1997) (quoting *Halperin v. CIA,* 629 F.2d 144, 148 (D.C. Cir. 1980)) (citations omitted). The record before the Court establishes that the Army properly redacted and withheld information under the Privacy Act.

*First*, the Army argues that information about third parties "withheld under FOIA Exemptions 6 and 7(C)" is also "non-releasable under the Privacy Act because the information is not about [the] Plaintiff, and its release would invade the privacy of the third-party employees." Def.'s Mot. at 9 (citation omitted); *see also* Debelle Decl. ¶ 20 ("The Privacy Act's access provision simply permits an individual to gain access to their own record or any information pertaining to the individual that is contained in a system of records and retrieved by name or personal identifier. 5 U.S.C. § 552a(d)(1). The Agency processed Plaintiff's request under both the Privacy Act and the FOIA. Therefore, third-party privacy information was redacted or withheld under the appropriate FOIA exemptions."). It explains that "[s]ome portions of the [requested] records were not about [Ms. Pearce], and included private information regarding other individuals; thus the [a]gency appropriately shifted its analysis to whether those records were required to be disclosed under FOIA." *Id.* (citations omitted). The Court agrees.

"[T]he Privacy Act prohibits [agencies] from disclosing information about a living third party without a written privacy waiver, unless FOIA requires disclosure." *Burke v. U.S. Dep't of Just.*, No. 96-cv-1739, 1999 U.S. Dist. LEXIS 17542 at *10 (D.D.C. Sept. 30, 1999) (emphasis omitted); *see also* 5 U.S.C. § 552a(b) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . required under section 552 of this title [*i.e.*, FOIA]."). Nothing in the record suggests that Ms. Pearce provided privacy waivers from the relevant third parties. And without the consent of those individuals, the statute mandated the Army's redactions and withholdings. This outcome makes sense because Section 552a(b) "prohibits [the] nonconsensual disclosure of any information that has been retrieved from a protected record." *Bartel*, 725 F.2d at 1408 (cleaned up).

Ms. Pearce counters that she has a right to these records in full because they "were stored in the Agency's electronic files under folders and file names pertaining to [her] and [her] administrative EEO complaint, investigation, and EEOC proceedings." Pl.'s Opp'n at 7 (citation omitted). And the Privacy Act does require agencies that "maintain[] a system of records" to permit "any individual to gain access to his record" and to "review the record and have a copy made[.]" 5 U.S.C. § 552a(d)(1). But Ms. Pearce ignores that Section 552a(b) limits that general disclosure obligation when the material involves other individuals. *See Sussman*, 494 F.3d at 1121 n.9 ("If certain materials pertain to both [the plaintiff] and other individuals, from whom the [defendant] has received no written consent permitting disclosure, the Privacy Act would both require (5 U.S.C. § 552a(d)(1)) and forbid (*id.* § 552a(b)) their disclosure . . . . [T]he prohibition must take precedence." (citation omitted)).

34

*Second*, the Army redacted and withheld material under Privacy Act Exemption (d)(5). *See* Debelle Decl. ¶¶ 23, 25, 28; *see also supra*, at 8–9, 11–13, 14–15. Exemption (d)(5) prohibits the release of "information compiled in reasonable anticipation of a civil action or proceeding," 5 U.S.C. § 552a(d)(5), and it "protects documents prepared in anticipation of quasi-judicial administrative hearings" as well as "actions in the district courts," *Martin*, 819 F.2d at 1188. The exemption extends to "investigatory documents" originally "premised on the possibility that prohibited practices will be uncovered, thereby warranting further action," even if no proceedings are in fact initiated. *Gov't Accountability Project v. Off. of Special Couns.*, No. 87-cv-235, 1988 WL 21394, at *4 (D.D.C. Feb. 22, 1988).

Relying on this exemption, the Army withheld "information concerning [the] attorneys' internal discussions and impressions regarding ongoing procurement litigation and details or drafts of a potential settlement agreement, as well as legal opinions and advice to clients concerning government ethics, employment litigation and personnel matters, and ongoing litigation." Def.'s Mot. at 19 (citing Debelle Decl. ¶¶ 23, 25, 28). The Army's declarant explained that material redacted and withheld under FOIA Exemption 5 was also redacted and withheld under Privacy Act Exemption (d)(5). *See* Debelle Decl. ¶¶ 23, 25, 28. This makes sense given that "FOIA Exemption 5 and Privacy Act Exemption (d)(5) permit the agency to withhold information that qualifies as attorney work product or falls under the attorney-client or deliberative process privilege." *Blazy*, 979 F. Supp. 10 at 24 (citing 5 U.S.C. § 552(b)(5) (protecting privileged materials); 5 U.S.C. § 552a(d)(5) (protecting information compiled in reasonable anticipation of a civil proceeding)). Having concluded that the Army's redactions and withholdings under FOIA Exemption 5 were proper, *see supra*, at 6–16, the Court also upholds the Army's reliance on Privacy Act Exemption (d)(5). The relevant material falls squarely within Exemption (d)(5).

Ms. Pearce appears to argue that the Army has not done enough to support this exemption. Pl.'s Opp'n at 6–7. But the Army justified its redactions and withholdings in great detail. Its declarant explained that it "withheld certain information pursuant to the attorney-client privilege that reflects consultation undertaken in confidence within Office of Counsel, as well as between the attorneys and Agency clients," Debelle Decl. ¶ 23; "withheld certain information pursuant to the attorney work product doctrine," *id.* ¶ 25; and "withheld certain information pursuant to the deliberative process privilege," *id.* ¶ 28 (addressing both FOIA Exemption 5 and Privacy Act Exemption (d)(5)). And the Army's *Vaughn* Index provided details for each document redacted or withheld for attorney-client privilege, attorney work product, and deliberative-process privilege. *See generally Vaughn*. The redactions and withholdings are proper under the Privacy Act. *See Smiertka v. U.S. Dep't. of Treasury, IRS*, 447 F. Supp. 221, 227 (D.D.C. 1978) (documents exempt from disclosure as records compiled in reasonable anticipation of a civil action or proceeding because Section 552a(d)(5) "was meant to afford the broad protection its broad terms apply"), *remanded on other grounds,* 604 F.2d 698 (D.C. Cir. 1979); *see also Mobley*, 924 F. Supp. 2d at 62 (saying the defendant was "correct to point out that a contrary rule would make attorneys fear that they should not record their candid thoughts, advice, or impressions until they first determined that any feared lawsuit would be meritorious." (cleaned up)).

## C.    Declaratory Judgment Act

Finally, Ms. Pearce brings a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* Compl. ¶¶ 49–54. But the Declaratory Judgment Act is not an independent source of federal jurisdiction. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). It is not cognizable where a plaintiff has not demonstrated a clear right to relief under another statute. *See, e.g.*, *Kenney v. U.S. Dep't of Just.*, 700 F. Supp. 2d 111, 118 n.3 (D.D.C. 2010) ("[B]ecause the Court finds that

the FBI has not violated the FOIA, plaintiff has no basis for obtaining a declaratory judgment [under the Declaratory Judgment Act.]" (citation omitted)). Because Ms. Pearce's FOIA and Privacy Act claims fail, *see supra*, at 6–37, so does her Declaratory Judgment Act claim.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment, ECF No. 17.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   July 10, 2025